STATE OF NEBRASKA, APPELLEE, V.
LARRY L. ROUCKA, APPELLANT.

573 N.W.2d 417

Filed January 30, 1998.   No. S-96-1191.

William G. Line for appellant.

Don Stenberg, Attorney General, and Jay C. Hinsley for appellee.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.

WRIGHT, J.
Larry L. Roucka was charged in the county court for Dodge County with driving while under the influence (DUI), second

offense, in violation of Neb. Rev. Stat. § 60-6,196 (Reissue 1993), and refusal to submit to a chemical test, in violation of Neb. Rev. Stat. § 60-6,197(4) (Reissue 1993). Roucka filed a motion to quash, challenging the constitutionality of § 60-6,196(8), which motion was overruled. The county court found Roucka guilty of the DUI, second offense, and refusal to submit to a chemical test charges. Roucka appealed to the district court for Dodge County, which affirmed the convictions and sentences of the county court. He then timely appealed the decision of the district court.

## I. SCOPE OF REVIEW

Whether a statute is constitutional is a question of law; accordingly, the Nebraska Supreme Court is obligated to reach a conclusion independent of the decision reached by the trial court. *State v. Kelley*, 249 Neb. 99, 541 N.W.2d 645 (1996).

Statutory interpretation is a matter of law, in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the decision made by the court below. *State v. Hingst*, 251 Neb. 535, 557 N.W.2d 681 (1997).

## II. FACTS

On February 17, 1996, at approximately 10:18 p.m., two Fremont police officers received a dispatch informing them that a possible intoxicated driver had just left Sapp Brothers driving a red and white Ford pickup with "43 county license plates." When the officers first saw the pickup, it was straddling two lanes of traffic at a stoplight at the corner of Military and Broad Streets. As the light turned green, the pickup proceeded south through the intersection, and the police officers observed it cross over the centerline several times. The police officers then stopped the pickup.

One of the officers approached the pickup and noticed that the driver, later identified as Roucka, appeared to be intoxicated. Roucka was asked to perform three field sobriety tests, which he performed poorly, and the officer then placed him under arrest for DUI.

Roucka was taken to the police department, where officers read Roucka the postarrest advisory form and asked that he

perform a chemical breath test. Roucka refused to take a breath test and refused to sign the advisory form which had been read to him. He told the officers that he would not give a breath test, but would give a blood test. He was advised that after he gave a breath test, he could take a blood test at his own expense. Roucka continued to refuse to take the breath test, and he was subsequently cited for second-offense DUI and refusal to submit.

Prior to trial, Roucka moved to quash the information on the basis that § 60-6,196(8) was facially unconstitutional. After the motion to quash was overruled, Roucka entered a plea of not guilty to both the second-offense DUI and refusal to submit charges. A bench trial was conducted, and Roucka was found guilty of both charges. Roucka was sentenced to 90 days in jail, a 1-year license revocation, and a $500 fine on the second-offense DUI charge, as well as 60 days in jail, a 6-month license revocation, and a $200 fine on the refusal to submit charge. The sentences were to be served concurrently.

## III. ASSIGNMENTS OF ERROR

Roucka assigns as error that the courts below erred in not finding § 60-6,196(8) unconstitutional and in finding him guilty of refusal to submit in spite of the defective advisory form.

## IV. ANALYSIS

### 1. CONSTITUTIONALITY OF § 60-6,196(8)

Roucka argues that § 60-6,196(8) should be struck down by this court because it is unconstitutionally vague on its face. Section 60-6,196(8) provides:

> Any person who has been convicted of driving while intoxicated for the first time or any person convicted of driving while intoxicated who has never been assessed for alcohol abuse shall, during a presentence evaluation, submit to and participate in an alcohol assessment. The alcohol assessment shall be paid for by the person convicted of driving while intoxicated. At the time of sentencing, the judge, having reviewed the assessment results, may then order the convicted person to follow through on the alco-

hol assessment results at the convicted person's expense in lieu of or in addition to any penalties deemed necessary.

Roucka argues that the phrase "assessed for alcohol abuse" is not defined in the criminal code and has no generally accepted meaning and that such term is meaningless and gives the court no direction as to the expenses that may be incurred as a result of the "alcohol assessment." Essentially, Roucka asserts that the motion to quash he filed prior to trial should have been sustained. Roucka claims that since subsection (8) is not severable from the remainder of § 60-6,196, the "entire DUI statute is in violation of the state and federal constitutions because of its outlandish penalty provisions." See brief for appellant at 5.

As a preliminary matter, it is necessary to set forth the procedural and standing requirements to challenge the constitutionality of a statute. Whether a statute is constitutional is a question of law; accordingly, the Nebraska Supreme Court is obligated to reach a conclusion independent of the decision reached by the trial court. *State v. Kelley*, 249 Neb. 99, 541 N.W.2d 645 (1996).

### (a) Procedure

A challenge to a statute, asserting that no valid application of the statute exists because it is unconstitutional on its face, is a facial challenge. *Id.* See, also, *United States v. Salerno*, 481 U.S. 739, 107 S. Ct. 2095, 95 L. Ed. 2d 697 (1987) (holding that facial challenge to legislative act is most difficult challenge to mount successfully, because challenger must establish that no set of circumstances exists under which act would be valid). A motion to quash or a demurrer is the proper procedural method for challenging the facial validity of a statute. *State v. Carpenter*, 250 Neb. 427, 551 N.W.2d 518 (1996); *State v. Conklin*, 249 Neb. 727, 545 N.W.2d 101 (1996); *State v. Kelley, supra*. All defects not raised in a motion to quash are taken as waived by a defendant pleading the general issue. *State v. Conklin, supra*; *State v. Bocian*, 226 Neb. 613, 413 N.W.2d 893 (1987); *State v. Etchison*, 190 Neb. 629, 211 N.W.2d 405 (1973). Once a defendant has entered a plea, the defendant waives all facial constitutional challenges to a statute unless

that defendant asks leave of the court to withdraw the plea and then files a motion to quash. See, *State v. Conklin, supra*; *State v. Bocian, supra*; *State v. Etchison, supra*.

Roucka filed a motion to quash on March 19, 1996. This motion was overruled by the county court on May 7. Subsequently, Roucka entered a plea of not guilty. We conclude that Roucka has not waived his right to facially challenge § 60-6,196(8) as unconstitutionally vague. Accordingly, we have jurisdiction to consider his facial challenge.

### (b) Standing

Roucka does not specify which constitutional provision § 60-6,196(8) violates. Generally, this court will not consider a constitutional challenge in the absence of a specification of the constitutional provision which is claimed to be violated. *State v. Burke*, 225 Neb. 625, 408 N.W.2d 239 (1987); *State v. Meints*, 223 Neb. 199, 388 N.W.2d 813 (1986). Since Roucka has not designated the provision in the Nebraska Constitution he considers analogous to the 5th and 14th Amendments to the U.S. Constitution, our analysis is limited to a consideration of the relevant provisions of the U.S. Constitution.

A statute may be constitutionally infirm if the statute is either vague or overbroad. *State v. Copple*, 224 Neb. 672, 401 N.W.2d 141 (1987); *State v. Frey*, 218 Neb. 558, 357 N.W.2d 216 (1984). A vagueness challenge to a statute is conceptually distinct from an overbreadth challenge. *State v. Carpenter, supra*; *State ex rel. Dept. of Health v. Jeffrey*, 247 Neb. 100, 525 N.W.2d 193 (1994); *State v. Copple, supra*. An overbroad statute need lack neither clarity nor precision, and a vague statute need not reach constitutionally protected conduct. *Id.* "Moreover, an enactment which is clear and precise, and therefore not vague, may nonetheless fail to pass constitutional muster by virtue of being overbroad in the sense that it prohibits the exercise of constitutionally protected conduct, such as the exercise of first amendment rights." *Frey*, 218 Neb. at 561, 357 N.W.2d at 218-19. Accord *State v. Copple, supra*.

In *Kolender v. Lawson*, 461 U.S. 352, 357-58, 103 S. Ct. 1855, 75 L. Ed. 2d 903 (1983), the Court explained the problems with vague criminal laws:

As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement. [Citations omitted.] Although the doctrine focuses both on actual notice to citizens and arbitrary enforcement, we have recognized recently that the more important aspect of the vagueness doctrine "is not actual notice, but the other principal element of the doctrine—the requirement that a legislature establish minimal guidelines to govern law enforcement." [Citation omitted.] Where the legislature fails to provide such minimal guidelines, a criminal statute may permit "a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections."

See, also, *Grayned v. City of Rockford*, 408 U.S. 104, 92 S. Ct. 2294, 33 L. Ed. 2d 222 (1972). Thus, vague statutes offend the 5th and 14th Amendment guarantees, and it is the minimal guidelines to govern law enforcement and due process requirements discussed in *Kolender* and *Grayned* with which this court is concerned.

In *Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 494-95, 102 S. Ct. 1186, 71 L. Ed. 2d 362 (1982), the Court established guidelines for determining whether a statute is facially invalid:

In a facial challenge to the overbreadth and vagueness of a law, a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct. If it does not, then the overbreadth challenge must fail. The court should then examine the facial vagueness challenge and, assuming the enactment implicates no constitutionally protected conduct, should uphold the challenge only if the enactment is impermissibly vague in all of its applications. A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.

See, also, *Midwest Messenger Assn. v. Spire*, 223 Neb. 748, 393 N.W.2d 438 (1986); *State v. Frey, supra*.

Using the framework provided by *Hoffman Estates*, we first address whether § 60-6,196(8) is overbroad. Here, the statutory proscription does not reach a substantial amount of constitutionally protected conduct, and there is no standing to challenge § 60-6,196(8) on the basis that it is overbroad. Further, Roucka has not challenged the statute as being overbroad.

Unlike an attack based on the overbreadth of a statute, a vagueness challenge questions the clarity of statutory language. The traditional rule of standing applies to a challenge to a statute on the grounds of vagueness. *State v. Kipf*, 234 Neb. 227, 450 N.W.2d 397 (1990). To have standing to assert a claim of vagueness, a defendant must not have engaged in conduct which is clearly prohibited by the questioned statute and cannot maintain that the statute is vague when applied to the conduct of others. *State v. Carpenter*, 250 Neb. 427, 551 N.W.2d 518 (1996); *State ex rel. Dept. of Health v. Jeffrey*, 247 Neb. 100, 525 N.W.2d 193 (1994). See, also, *State v. Sommerfeld*, 251 Neb. 876, 560 N.W.2d 420 (1997); *State v. Kipf, supra*. Thus, conduct which is clearly proscribed by the statute will not support a vagueness challenge (1) because the statute is not vague as to the party challenging the statute and (2) because the court will not examine the vagueness of the law as it might apply to the conduct of persons not before the court. See, *Hoffman Estates v. Flipside, Hoffman Estates, supra*; *State v. Carpenter, supra*; *State ex rel. Dept. of Health v. Jeffrey, supra*; *State v. Sommerfeld, supra*; *State v. Kipf, supra*. Accordingly, to have standing to challenge a statute as vague, Roucka must not have engaged in conduct which is clearly proscribed by the statute and cannot complain of the vagueness of the law as applied to others.

We find significant the fact that Roucka claims that subsection (8) is not severable from the remainder of § 60-6,196 and, therefore, attacks § 60-6,196 as a whole. On this basis, Roucka asserts that his conviction for DUI should be set aside. Since Roucka argues that subsection (8) is not severable, we will not attempt to make such a determination and will look at the statute as a whole to determine whether Roucka has engaged in conduct which is clearly proscribed by the statute. Section 60-6,196 clearly prohibits persons from driving while under the

influence of drugs or alcohol, and Roucka was convicted of this crime. Thus, addressing § 60-6,196 as a whole, we conclude that Roucka does not have standing to attack the vagueness of the statute, because he has engaged in conduct which is clearly proscribed by the statute.

## 2. ADVISORY FORM

Roucka argues that his conviction for refusal to submit to a chemical test should be reversed because of the inadequacy of the advisory form read to him. The State contends that the advisory form complied with the concerns discussed in *Smith v. State*, 248 Neb. 360, 535 N.W.2d 694 (1995), and therefore sufficiently warned Roucka of the risks of submitting to and refusing to submit to a chemical test. The State points out that the form was revised on July 20, 1995, approximately 2 weeks after our opinion in *Smith*, in order to comply with the deficiencies highlighted in *Smith*.

Prior to the administration of a breath test, all operators are read an advisory form. The sufficiency of this form has been the subject of several cases in Nebraska—the most significant being *Smith*. In *Smith*, the issue was whether the arresting officer, by reading the advisory form, gave Smith adequate notice of the consequences of failing a breath test, as required by § 60-6,197(10), which at that time provided:

> Any person who is required to submit to a preliminary breath test or to a chemical blood, breath, or urine test or tests pursuant to this section shall be advised of (a) the consequences of refusing to submit to such test or tests and (b) the consequences if he or she submits to such test and the test discloses the presence of a concentration of alcohol in violation of subsection (1) of section [60-6,196]. Refusal to submit to such test or tests shall be admissible in any action for a violation of section [60-6,196] or a city or village ordinance enacted pursuant to such section.

We concluded that Smith had not been fully advised of the consequences of submitting to a breath test and failing it, as required by § 60-6,197(10). We held that the advisory form should have warned Smith of the cost of reinstating his license,

that he could be charged with a felony, that he could be charged with both refusal to submit and DUI, and that the results of the chemical test were probative of DUI and could be used in a court of law. Because Smith was not informed of these consequences, we concluded that his operator's license could not be revoked by the director of the Department of Motor Vehicles. See, also, *State v. Christner*, 251 Neb. 549, 557 N.W.2d 707 (1997).

These same principles have been applied in cases where the defendant refused to take a chemical test and was charged with refusal to submit. For example, in *Perrine v. State*, 249 Neb. 518, 544 N.W.2d 364 (1996), we held that the advisory form read to Perrine failed to adequately advise him of the consequences of refusing to take a breath test. Subsequent cases in this state have held that the advisory form invalidated in *Smith* was also insufficient to give a criminal defendant notice of the natural and probable consequences of submitting to or refusing to submit to a chemical test. See, *State v. Christner, supra*; *State v. Emrich*, 251 Neb. 540, 557 N.W.2d 674 (1997); *State v. Hingst*, 251 Neb. 535, 557 N.W.2d 681 (1997); *State v. Fiedler*, 5 Neb. App. 629, 562 N.W.2d 380 (1997); *State v. Connick*, 5 Neb. App. 176, 557 N.W.2d 713 (1996); *State v. Miceli*, 5 Neb. App. 14, 554 N.W.2d 427 (1996).

In response to *Smith*, the Fremont Police Department amended its postarrest advisory form so that each of the deficiencies listed in *Smith* was corrected. Subsequently, the Legislature amended § 60-6,197(10) to provide as follows: "Any person who is required to submit to a chemical blood, breath, or urine test or tests pursuant to this section shall be advised that refusal to submit to such test or tests is a separate crime for which the person may be charged." See 1996 Neb. Laws, L.B. 939, § 2. This amendment became operative on February 27, 1996, and removed the need to advise a motorist faced with the choice of taking a chemical test of the natural and probable consequences of submitting or refusing to submit to the chemical test. See *Smith v. State*, 248 Neb. 360, 535 N.W.2d 694 (1995).

Roucka was read the above-mentioned revised advisory form prior to refusing to give a breath test. He was charged

with DUI on February 17, 1996, but the amended version of § 60-6,197(10) was not in effect at the time of the incident and, therefore, does not apply to Roucka. Therefore, the issue is whether the revised advisory form complied with § 60-6,197(10) prior to its amendment.

We conclude that the advisory form read to Roucka sufficiently addressed each of the concerns raised in *Smith*. Roucka claims, however, that even if the advisory form complies with *Smith*, it is still inadequate in light of our decisions in *Biddlecome v. Conrad*, 249 Neb. 282, 543 N.W.2d 170 (1996), and *Perrine v. State, supra*, because those cases raise an additional deficiency in the advisory form.

In *Biddlecome*, we held that the advisory form read to the defendant prior to taking the chemical test was defective because, in addition to all the concerns raised in *Smith*, the form did not mention "the restrictions on a motorist's ability to obtain employment driving privileges contained in § 60-6,206(2)." 249 Neb. at 285, 543 N.W.2d at 172. Neb. Rev. Stat. § 60-6,206(2) (Reissue 1993) provides:

> At the expiration of thirty days after an order of revocation is entered under subsection (1) of this section, any person whose operator's license has been administratively revoked for a period of ninety days for submitting to a chemical test pursuant to section 60-6,197 which disclosed the presence of a concentration of alcohol in violation of section 60-6,196 (a) may make application to the director for issuance of an employment driving permit . . . to operate a motor vehicle . . . . *This subsection shall not apply to nor shall any person be eligible for the benefit of this subsection during any period of time during which his or her operator's license is subject to an administrative revocation order (i) for refusal to submit to a chemical test of blood, breath, or urine as required by section 60-6,197*
> . . . .

(Emphasis supplied.) Roucka claims that because the revised form failed to advise him of the restrictions described in § 60-6,206(2), the entire advisory form was inadequate and that like the defendant in *Biddlecome*, he could not be charged with refusal to submit.

We are not persuaded by Roucka's argument, for we can readily distinguish the case at bar from *Biddlecome v. Conrad, supra,* and *Perrine v. State,* 249 Neb. 518, 544 N.W.2d 364 (1996). The advisory forms in *Biddlecome* and *Perrine* contained all the deficiencies noted in *Smith,* and in addition, the forms did not advise the operator of the restriction on an operator's ability to obtain employment driving privileges contained in § 60-6,206(2). Here, the advisory form read to Roucka specifically addressed each of the concerns set forth in *Smith* and excluded only a discussion of § 60-6,206(2).

We emphasize that in *Smith,* we stated that the advisory form was deficient because it, among other things, failed to inform the arrested party of (1) the evidentiary consequences of the chemical test; (2) the license reinstatement fee; (3) whether criminal penalties attached to the first, second, third, and fourth commissions of refusal to submit to the chemical test, or, rather, to the first, second, third, and fourth commissions of DUI; and (4) other charges, including felony charges, which can result from a test disclosing an illegal concentration of alcohol. In *Biddlecome* and *Perrine,* we added the requirement that the form include the restrictions on a motorist's ability to obtain employment driving privileges contained in § 60-6,206(2). We concluded that the forms in *Smith, Biddlecome,* and *Perrine* included such a limited recitation of consequences as to be not only inadequate but misleading. The inadequacy of the form was that, taken as a whole, it did not provide sufficient warning to comply with § 60-6,197(10). A reasonable application of § 60-6,197(10) before the 1996 amendment permits us to conclude that the advisory form read to Roucka, although not mentioning the restrictions contained in § 60-6,206(2), substantially complied with the statute then in effect, and the county court was correct in finding that Roucka unlawfully refused to submit to the chemical test.

## V. CONCLUSION

We affirm the convictions and sentences of the county court, as affirmed by the district court.

AFFIRMED.

WHITE, C.J., concurs.

CONNOLLY, J., concurring.

I agree with the result; however, I am of the opinion that *Smith v. State*, 248 Neb. 360, 535 N.W.2d 694 (1995), and *Biddlecome v. Conrad*, 249 Neb. 282, 543 N.W.2d 170 (1996), were incorrectly decided for the reasons I have previously set forth in the dissent in *Smith*.

GERRARD, J., joins in this concurrence.